**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MICHAEL M. MOSES, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 2:11-CV-386-PRC |
| ) | |
| USW LOCAL UNION 1014, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion by Defendant USW Local 1014 for Summary Judgment [DE 25], filed on March 19, 2013. For the reasons set forth in this Opinion and Order, the Court grants the motion.

**PROCEDURAL BACKGROUND**

**A. EEOC Charge 24E-2011-00115**

Prior to the institution of this lawsuit, Michael M. Moses filed a Charge of Discrimination with the EEOC numbered 24E-2011-00115 ("Charge 2011-115"). The charge was signed by Moses on March 15, 2011. In this charge, Moses alleged that USW Local Union 1014 discriminated against him based upon his race and that the discriminatory acts took place from February 25, 2011, through March 15, 2011. He stated, "I believe I have been discriminated against based on my race/black in violation of Title VII of the Civil Rights Act of 1964, as amended."

The EEOC was unable to conclude that there was a violation of the applicable statutes based on this charge. On June 27, 2011, the EEOC mailed Moses a right-to-sue notice for Charge 2011-115 indicating that he had 90 days from the receipt of the letter to file a lawsuit.

**B. Federal Court Proceedings**

On October 24, 2011, Moses filed with this Court an Employment Discrimination Complaint against USW Local Union 1014, alleging that USW Local Union 1014 violated the Americans with Disabilities Act, 42 U.S.C. § 12101. Moses alleges that he is "an American with disabilities" and that "alcohol and gambling are [his] vices." Compl. He alleges that three USW Local Union 1014

representatives denied him a full and fair grievance process and that other union members with disabilities received full and fair grievance representation. Moses attached to the Complaint a copy of the right-to-sue notice dated June 27, 2011. He does not indicate in the Complaint when he received the right-to-sue notice.

On January 23, 2012, USW Local Union 1014 filed an Answer.

On March 19, 2013, USW Local Union 1014 filed the instant Motion for Summary Judgment, memorandum in support, and appendix of evidence. USW Local Union also sent a Notice to Pro Se Litigant, advising Moses of the consequences of failing to respond to the Motion for Summary Judgment. On April 5, 2013, Moses filed a response with an appendix, and USW Local Union 1014 filed a reply on April 18, 2013.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show

that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## FACTUAL BACKGROUND

### A. Moses' Termination and the Grievance Process

When he was employed by U.S. Steel Corporation at its Gary Works, Moses was represented for collective bargaining purposes by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industry and Service Workers International Union (the "USW"), assisted by USW Local Union 1014. Under USW's collective bargaining agreement ("CBA") with U.S. Steel, employees may be terminated for proper cause, but such action may be challenged by USW Local Union 1014 under the multi-step grievance procedure established by the CBA.

On July 21, 2010, at U.S. Steel Gary Works Paymaster's Office, Moses requested a replacement pay check for the pay period ending July 16, 2010, and signed a Replacement Check Agreement, which provided, in part:

> I certify that my payroll check for pay ending July 10, 2010, has not been received. I hereby request a replacement payroll check from U.S. Steel Corporation. I understand and agree that in exchange for receiving a replacement payroll check, I will not cash the original payroll check if received. I also agree to return the original check immediately upon receipt to the Paymaster. I understand that I may be subject to discipline up to termination if I fail to abide by the above conditions.

4

> Furthermore, in the event both checks are cashed, I authorize immediate repayment of the entire overpaid amount by a deduction from any earnings I am due from the Company.

Def. Br., Exh. 5-B, p. 2.

On August 19, 2010, U.S. Steel terminated its employment of Moses for improper receipt of a replacement pay check, theft, and violations of the Replacement Check Agreement he had made with U.S. Steel. It has been U.S. Steel's consistent policy and practice to discharge employees who cash an original and a replacement pay check for the same pay period after signing a Replacement Check Agreement, such as that signed by Moses.

USW Local Union 1014 filed and processed through two steps of the CBA grievance procedure for Moses a grievance challenging the termination of his employment. On September 9, 2010, Moses participated in the second step meeting between U.S. Steel and USW Local Union 1014 on this grievance. At that meeting, Moses admitted that he cashed both his original pay check and the replacement check issued to him by U.S. Steel. At that meeting, U.S. Steel held Moses to the Replacement Check Agreement he had signed and maintained its denial of Moses' discharge grievance. USW Local Union 1014 appealed the grievance to step three.

At step three, Moses' discharge grievance became the responsibility of USW International Staff Representative Alexander Jacque, who has had 20 years of experience negotiating collective bargaining agreements and serving as USW's advocate in third party arbitration proceedings. Staff Representative Jacque reached the conclusion that Moses' discharge grievance would not be taken to third party labor arbitration based on his good faith evaluation of the evidence, including Moses' admission that he cashed both the original and replacement pay checks, the Replacement Check Agreement Moses made with U.S. Steel, Staff Representative Jacque's understanding of U.S. Steel's consistent policy and practice of discharging employees who cash an original and a replacement check for the same pay period, his review of the minutes of the step two meeting on Moses'

discharge grievance, and his discussions of the case with Moses and with the USW Local Union 1014 griever familiar with the case.

Moses is African American. Jacque is African American. Jacque states in his Affidavit that Moses's race or any asserted condition of gambling were not factors in reaching his decision.

### B. Service of Discovery

On December 4, 2012, USW Local Union 1014 served on Moses a Request for Admissions. USW Local Union 1014 never received a response to the Request for Admissions. Moses has not filed a response to the Request for Admissions with the Court.

Thus, Moses has admitted the following facts as true due to his failure to answer or respond to USW Local Union 1014's Request for Admissions:

Request # 1.  On or before July 25, 2011, you received the Right to Sue Notice from the EEOC for Charge of Discrimination #24E-2011-115.

Request # 2.  From July 25, 2011 to October 24, 2011 you did not experience any extraordinary circumstances which would have prevented you from filing a lawsuit against USW, Local 1014.

## ANALYSIS

In his Employment Discrimination Complaint, Moses alleges that USW Local Union 1014 violated his rights under the Americans with Disabilities Act ("ADA"). USW Local Union 1014 seeks a grant of summary judgment in its favor on Moses' claim on the basis that the allegations of the Complaint are outside the scope of the underlying EEOC charge of race discrimination, the Complaint is untimely, and Moses cannot establish that USW Local Union 1014 discriminated against him because of any actual or perceived disability.

### A. Scope of EEOC Charge

Generally, a plaintiff cannot bring claims in a lawsuit under the ADA or Title VII that were not included in a prior administrative charge. *See* 42 U.S.C. § 12117 (adopting the procedures set

forth in Title VII, including the requirement that administrative remedies be exhausted, 42 U.S.C. § 2000e-5); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (recognizing that an employee may only sue under the ADA once a timely charge of discrimination has been filed); *Cheek v. W.& S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)).

Although the rule is not jurisdictional, it is a condition precedent to filing a discrimination complaint. *Cheek*, 31 F.3d at 500 (internal citation omitted) (citing *Babrocky v. Jewel Food Co.*, 773, F2d 857, 864 (7th Cir. 1985)). In *Cheek*, the court stated the "EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek,* 31 F.3d 947 at 501. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charge party notice of the charge." *Id*. at 500.

However, if a claim that is not asserted in the EEOC charge is "reasonably related" to a claim that was included in the EEOC charge, the plaintiff may pursue that claim in court. *Cheek*, 31 F.3d at 500; *see also Babrocky*, 773 F.2d at 864 (7th Cir. 1985). A claim in a judicial complaint is reasonably related to an EEOC charge "if the claim in the complaint can reasonably be expected to grow out of an investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. Because EEOC charges are often completed by laypersons, the plaintiff need not allege each and every fact in the charge that, in the aggregate, form the basis of the claims in the complaint. *Cheek*, 31 F.3d at 500; *Babrocky*, 773 F.2d at 865-66 (holding that it is an error for a court to require an exact correspondence between the words of an EEOC charge and the contents of a Title VII complaint and that EEOC charges are to be construed with "utmost liberality").

In his Complaint, Moses alleges that his claim is based on a violation of the ADA (42 U.S.C. § 12101). He alleges in the Complaint that, when USW Local 1014 Union Representatives became

7

aware of his disability, they "denied me a full and fair grievance process." However, in his Charge 2011-115 filed with the EEOC, he did make mention of any disability. Rather, he checked the box for "RACE" and wrote:

> I am an African American who became a dues paying member in good standing on June 26, 2000. I filed a grievance with the union on August 12, 2010. I was denied terms and conditions of my union contractual agreement that has been afforded to Respondent's Hispanic and White Members, when the union failed to follow through on my due process of representation. On March 15, 2011, I was told by Respondent's White Zone 4 Griever, John Nacarroto, "the union is not going through with arbitration and has dropped my case as of February 25, 2011; the union doesn't believe they could win in arbitration". If I had been a White or Hispanic member the union would have given me the same favorable treatment as was afforded to them in following through with due process.
>
> I believe that I have been discriminated against based on my race/black in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def. Br., Exh. 2.

Although both the Charge and the Complaint address the same employment action, namely the grievance procedure, Moses' Complaint alleges a new theory of liability. Pursuant to 42 U.S.C. § 2000e-5, USW Local Union 1014 was given notice of the allegations of race discrimination in the charge of discrimination, and the allegations of race discrimination were investigated by the EEOC. Any attempt by the EEOC to settle the dispute with USW Local Union 1014 by conference, conciliation, and persuasion would have also been based on those facts. Moses cannot allege one set of facts before the EEOC in his charge of discrimination and then, in his lawsuit, assert a wholly different legal theory. Thus, Moses cannot satisfy the necessary administrative prerequisites to suit based on this charge of discrimination because the claim for relief under the ADA in his Complaint filed with the Court does not relate to the same theory of liability alleged in Charge 2011-115 based on race discrimination filed with the EEOC. The Court grants summary judgment in favor of USW Local Union 1014 on Moses' Complaint.

## B. Timeliness

In addition, Moses's Complaint is untimely. Federal Rule of Civil Procedure 36(a)(3) provides that "[a] matter is admitted unless within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3). "Rule 36(a) is self-executing, meaning that no court intervention is necessary for an admission to be established, and failure to timely respond results in the admission of the matters raised in a request for admissions." *Hardwick v. John and Mary E. Kirby Hosp.*, No. 10-CV-2149, 2011 WL 4433764, * 2 (N.D. Ill. Sept. 22, 2011). While the failure to respond to a request for admission may deprive a party of the opportunity to contest the merits of the case, the result is the orderly disposition of the case. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).

Although the Court is aware that pro se litigants face unique challenges, it is generally recognized that procedural rules must be complied with in order to promote an interest in the uniform administration of justice. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). To ensure fairness, "rules apply to uncounseled litigants and must be enforced." *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998).

In this case, USW Local Union 1014 served a Request for Admissions on Moses. Moses did not answer the Request for Admissions within the time period specified. Accordingly, the matters therein are deemed admitted and are "conclusively established" for purposes of this litigation Fed. R. Civ. P. 36(b). Under Rule 36, default admissions may serve as the factual foundation for summary judgment. *Kasuboski*, 834 F.2d at 1350; *see also McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). Summary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment. *Kasuboski*, 834 F.2d at 1350. However, the Court must determine whether summary judgment is appropriate under all the undisputed material facts. Fed. R. Civ. P. 56. Therefore, the Court now

takes the admitted facts as true for purposes of summary judgment and turns to the legal argument before the Court.

Moses failed to satisfy the prerequisite to an ADA lawsuit by failing to file his lawsuit within 90 days of having received the applicable right-to-sue letter from the EEOC. The ADA requires a plaintiff to file a civil action within 90 days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a) (adopting the charge-filing requirements and enforcement mechanism of Title VII in ADA cases). The receipt of a right-to-sue notice by a claimant or his attorney starts the 90-day period within which a plaintiff has to file a cause of action under Title VII or the ADA. *Threadgill v. Moore, U.S.A. Inc.*, 269 F.3d 848, 849-50 (7th Cir. 2001). A right-to-sue letter from the EEOC is a prerequisite to bringing suit, and the right-to-sue letter that forms the basis for a plaintiff's complaint must relate to the facts alleged before the EEOC. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

The 90-day period of limitations set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC's right-to-sue notice is actually received by the claimant. Equitable tolling may excuse an untimely filing if a plaintiff exercised due diligence, yet could not have discovered all of the information needed to file his claim on time. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). However, the doctrine of equitable tolling is to be used sparingly and is limited to situations in which extraordinary circumstances prevented a party from filing on time. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005) (citing *Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002)).

In this case, the EEOC mailed Moses a right-to-sue notice for Charge 2011-115 on June 27, 2011. The notice indicated that Moses had 90 days from the receipt of the letter to file a lawsuit. Moses filed his lawsuit on October 24, 2011. He did not indicate in the Complaint when he received the right-to-sue notice. Through his admissions under Rule 36, Moses admitted that he received this right-to-sue notice on or before July 25, 2011. Using July 25, 2011 as the latest possible day that

Moses received the right-to-sue notice for Charge 2011-115 from the EEOC, Moses' Complaint is untimely, as it was filed 91 days after the receipt of the notice. Moreover, even if Moses had received the right-to-sue notice well before July 25, 2011, he admitted that from July 25, 2011, to October 24, 2011, he did not experience any extraordinary circumstances that would have prevented him from filing his lawsuit against USW Local Union 1014. Notably, Moses has not argued in his response brief for equitable tolling.

Because at least 91 days have elapsed between the date that Moses received the right-to-sue notice for Charge 2011-115 and the date that he filed his Complaint with this Court and because there is no indication of any circumstances justifying equitable tolling of the 90-day period, Moses' Complaint is untimely. On this additional basis, the Court grants summary judgment in favor of USW Local Union 1014 on Moses Complaint.

### C. Substantive Claim

In his Complaint, Moses alleges that "my Local 1014 union reps. John Naccarato, Alexander Jacque and Ernie Peterson denied me a full and fair grievance process." Compl. In its motion, USW Local Union 1014 asserts that it does not concede that Moses is a person with a disability within the meaning of the ADA or that he fulfilled the jurisdictional prerequisite for an ADA federal civil action. However, assuming for the purpose of argument both facts and considering Moses' assertion of a denial of "full and fair grievance process" to be a claim of ADA discrimination with respect to a union's representational functions, USW Local Union 1014 argues that Moses cannot establish the requisite elements of such a claim.

To establish a discrimination claim against the USW Local Union 1014, Moses must satisfy the following three elements by a preponderance of the elements: (1) the employer violated the collective-bargaining agreement between the union and the employer; (2) the union breached its own duty of fair representation by not addressing the breach; and (3) some evidence shows an animus against the protected class. *Greenslade v. Chi. Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997)

(Title VII); *see also Dillard v. Serv. Employees Int'l Union, Local 73, CTW, CLC*, No. 11 C 3360, 2012 WL 714631, * 2 (N.D. Ill. Mar. 1, 2012) (Title VII and ADA).

Moses has not offered any evidence in support of any element of his claim, and the evidence of record is contrary to such a claim. Moses' discharge grievance was appealed by USW Local 1014 to step three. At that stage, Staff Representative Jacque made a good faith evaluation of the undisputed evidence, including Moses' admission that he cashed both checks and his knowledge of U.S. Steel's consistent policy and practice concerning attempts by employees to cash duplicate pay checks, and decided that Moses' discharge grievance would not be taken to third-party labor arbitration. There is no evidence that Moses' race, African American, which is the same as that of Staff Representative Jacque, or Moses' after-the-fact asserted condition of disability were factors in Jacque reaching his conclusion. Therefore, even if he had exhausted his administrative remedies and even if his Complaint had been timely filed, Moses would not be able to satisfy the requisite elements of his substantive discrimination claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion by Defendant USW Local 1014 for Summary Judgment [DE 25]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant USW Local 1014 and against Plaintiff Michael M. Moses.

The Court further **DIRECTS** the Clerk of Court to place under **SEAL** the Appendix [DE 29] submitted by Plaintiff Michael M. Moses in support of his response brief, because it contains sensitive personal medical records.

SO ORDERED this 20th day of May, 2013.

                                                  s/ Paul R. Cherry
                                                MAGISTRATE JUDGE PAUL R. CHERRY
                                                UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Pro se Plaintiff